IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFSON ST-HILAIRE, MERLANGE MEME, EVENKS MEME, NADEGE JEAN MARIE, and L.M.D.M., by her next friend Martin Welp, on their own behalf and on behalf of a class of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMMISSIONER OF THE INDIANA BUREAU OF MOTOR VEHICLES, in his official capacity, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br><br><br><br><br> No. 1:23-cv-1505 <br><br><br><br><br><br> COMPLAINT – CLASS ACTION |

## VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND NOTICE OF CHALLENGE TO THE CONSTITUTIONALITY OF STATE STATUTE

**Introductory Statement**

1. When the federal government determines that a noncitizen should be temporarily admitted to the United States "for urgent humanitarian reasons or significant public benefit," it may allow them to do so by placing them on "humanitarian parole." *See* 8 U.S.C. § 1182(d)(5)(A). This status allows a noncitizen to enter the country and to remain in the country for a set period of time (which may be subject to renewal) and may allow them to apply for employment authorization while they are here. Under this program, in recent years the federal government has authorized the entry of substantial numbers of noncitizens from Afghanistan, Ukraine, Venezuela, Cuba, Haiti, and Nicaragua due to humanitarian crises in those countries.

2. Under federal law, certain Afghan nationals admitted to the United States on humanitarian

1

parole are eligible to receive a REAL-ID compliant driver's license or identification card, *see* Pub. L. No. 117-43, § 2502(b)(3), 135 Stat. 344, 377 (2021), but federal law does not otherwise address the eligibility of humanitarian parolees to receive state-issued driver's licenses or identification cards once they have been admitted to the United States. In Indiana, this issue is addressed by House Enrolled Act 1050 ("H.E.A. 1050"), which was signed into law by the Governor on May 4, 2023. H.E.A. 1050 creates a pathway for humanitarian parolees from one and only one country to obtain Indiana driver's licenses or identification cards and to register and title vehicles: parolees from Ukraine. Persons on humanitarian parole from other countries could benefit equally from being allowed to drive or otherwise obtaining state-issued identification, and the limitation imposed by H.E.A. 1050 represents quintessential national-origin discrimination. This form of discrimination is subject to, and fails, strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Because the Indiana Bureau of Motor Vehicles receives federal financial assistance, it is subject to the requirements of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and H.E.A. 1050 violates this statute as well. And, on top of all this, the manner in which H.E.A. 1050 distinguishes among persons on humanitarian parole is preempted by the federal government's exclusive right to regulate immigration and by the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*

3.      The plaintiffs are all humanitarian parolees who have been admitted to the United States and who reside in Indiana. They have all obtained authorization to work in the United States and, with the exception of L.M.D.M. (who is nine years old), are currently employed. For a variety of reasons, they would all benefit greatly from being able to obtain driver's licenses or state-issued identification cards. However, because they are Haitians and not Ukrainians, under H.E.A. 1050 they are not able to do so. On behalf of both themselves and similarly situated persons throughout

Indiana, they are entitled to injunctive and declaratory relief to remedy H.E.A. 1050's blatant national-origin discrimination.

**Jurisdiction, Venue, and Cause of Action**

4.  This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6.  Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and by 28 U.S.C. §§ 2201 and 2202.

7.  This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States, as well as pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, and as a preemption claim pursuant to the Supremacy Clause of the United States Constitution.

**Parties**

8.  Jeffson St-Hilaire is an adult Haitian national who has been admitted to the United States on humanitarian parole. He is currently a resident of Hancock County, Indiana.

9.  Merlange Meme is an adult Haitian national who has been admitted to the United States on humanitarian parole. She is currently a resident of Spencer County, Indiana.

10. Evenks Meme is an adult Haitian national who has been admitted to the United States on humanitarian parole. He is currently a resident of Spencer County, Indiana.

11. Nadege Jean Marie is an adult Haitian national who has been admitted to the United States on humanitarian parole. She is currently a resident of Spencer County, Indiana.

12. L.M.D.M. is a minor Haitian national who has been admitted to the United States on humanitarian parole. She is currently a resident of Spencer County, Indiana, and is proceeding in this litigation by her initials pursuant to Rule 5.1 of the Federal Rules of Civil Procedure and by

her next friend, Martin Welp. Mr. Welp has formally sponsored L.M.D.M.'s admission to the United States on humanitarian parole.

13. The Commissioner of the Indiana Bureau of Motor Vehicles is the duly appointed head of that agency. He is sued in his official capacity.

**Class Action Allegations**

14. This cause is brought by the plaintiffs on behalf of themselves and a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

15. The class is defined as follows:

> All current and future Indiana residents admitted to the United States on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) who are not citizens or nationals of Ukraine and who did not last habitually reside in Ukraine, and who are not eligible for a driver's license or identification card under section 202 of the REAL ID Act of 2005.

16. As defined, the class meets all requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically:

   a. The class is so numerous that the joinder of all members is impracticable.

   b. There are questions of law or fact common to the class, namely whether the manner in which the State of Indiana allows Ukrainians on humanitarian parole, but does not allow persons on humanitarian parole from other countries, to receive state-issued driver's licenses or identification cards violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*, or is preempted

   c. The claims of the representative parties are typical of those of the class.

   d. The representative parties will fairly and adequately represent the class.

17. The class meets the further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure insofar as the party opposing the class has, at all times, acted or refused to act on grounds generally applicable to the class.

18. Undersigned counsel are appropriate attorneys to be appointed to represent the class and

should therefore be appointed pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**Humanitarian Parole**

19. The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, sets forth conditions under which a foreign national may be admitted to and remain in the United States.

20. As is relevant here, the INA provides (with certain exceptions) that "[t]he Attorney General may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). This program is known as "humanitarian parole."

21. A noncitizen may file a petition with the United States to be placed on humanitarian parole. If granted, this status will allow the noncitizen to enter and remain in the United States during the duration of their parole. The United States will set the duration for a noncitizen's parole, although under appropriate circumstances an initial parole period may be extended or renewed.

22. Obtaining admission to the United States under the humanitarian parole program is not the same as having an immigrant visa and is not the same as having lawful permanent status.

23. Historically, humanitarian parole has frequently been granted to noncitizens required to enter the United States for a brief period of time as a result of circumstances particular to an individual or family. For instance, persons might obtain humanitarian parole in order to receive urgent medical care or to attend a court hearing in the United States.

24. Humanitarian parole has also frequently been granted to noncitizens allowed to enter the United States while an application for asylum is pending. Although parole for these individuals is generally referenced as "advance parole," it is a form of humanitarian parole. *See, e.g.*, *Ibragimov v. Gonzales*, 476 F.3d 125, 132 (7th Cir. 2007).

25.     On top of these situations, which might be applicable to persons from any country, the United States has also developed and implemented multiple "special programs" whereby nationals of specific countries may obtain humanitarian parole as a result of humanitarian crises or other circumstances affecting significant numbers of persons in their countries of origin.

26.     For instance, under the Cuban Family Reunification Parole Program and the Haitian Family Reunification Parole Program, the United States allows certain United States citizens and lawful permanent residents to apply for humanitarian parole for their family members in Cuba and Haiti, respectively.  The Central American Minors Program allows certain qualified children under the age of 21 from El Salvador, Guatemala, and Honduras, as well as their family members, to obtain placement on humanitarian parole.  The Filipino World War II Veterans Parole Program allows some Filipino World War II veterans and their U.S. citizen or lawful permanent resident spouses to apply for parole for certain family members.  And the Immigrant Military Members and Veterans Initiative allows certain noncitizen military service members and their qualifying family members to seek humanitarian parole.

27.     After the withdrawal of its military from Afghanistan, the United States also authorized humanitarian parole for some noncitizens from that country who might be in danger were they to remain in Afghanistan, although it has been publicly reported that Afghans seeking humanitarian parole could expect significant delays in the processing of their applications and that few such persons have been granted parole.  *See, e.g.*, Am. Immigration Council, *Agency Failures Make Obtaining Humanitarian Parole Almost Impossible for Afghans*, Mar. 16, 2023, *at* https://www.americanimmigrationcouncil.org/foia/uscis-failures-afghans-parole.

28.     On April 21, 2022, following the invasion of Ukraine by Russia, the United States announced—as a part of its "Uniting for Ukraine" initiative—a program whereby Ukrainian

nationals fleeing Russia's invasion could apply for humanitarian parole. Parole under this program is granted for a period of up to two years although that period may be extended or renewed. Information on this program is available at https://www.uscis.gov/ukraine.

29. And on October 18, 2022, the U.S. Department of Homeland Security announced a new humanitarian parole program for nationals of Venezuela who seek safe haven within the United States due to the conditions in their country. On January 6, 2023, this program was extended to nationals of Cuba, Haiti, and Nicaragua. Under this program, colloquially referenced as the "CHNV Parole Program," the United States may grant parole status to up to 30,000 noncitizens each month. Parole under this program is granted for a period of up to two years although that period may be extended or renewed. Information on this program is available at https://www.uscis.gov/CHNV.

30. After a noncitizen has been granted parole status and arrives in the United States, they may apply to the United States Citizenship and Immigration Services ("USCIS") for employment authorization, which, if granted, will allow them to work in the United States during the course of their parole. Due to a backlog in such requests, the process of obtaining employment authorization may take several months.

**House Enrolled Act 1050**

31. On May 4, 2023, the Governor of Indiana signed into law House Enrolled Act 1050 ("H.E.A. 1050").

32. Section 20 of H.E.A. 1050, which took immediate effect and which is codified at Indiana Code § 9-14-8-3.5, provides in its entirety as follows:

> The bureau of motor vehicles shall adopt rules under IC 4-22-2, including emergency rules in the manner provided under IC 4-22-2-37.1, necessary to implement the administration of the following:

> (1) Driver's licenses, permits, or identification cards for individuals granted parole.
>
> (2) Registration and certificates of title for motor vehicles of individuals granted parole.

33. Section 17 of H.E.A. 1050, which also took immediate effect and which is codified at Indiana Code § 9-13-2-121.5, defines "parole" as follows:

> "Parole" means temporary legal presence in the United States under 8 U.S.C. 1182(d)(5) granted to an individual who:
>
> (1) is a citizen or national of Ukraine or last was a habitual resident of Ukraine; and
>
> (2) meets the criteria established under Section 401(a) of the Additional Ukraine Supplemental Appropriations Act (Public Law 117-128) as in effect on January 1, 2023.

34. Section 401(a) of the Additional Ukraine Supplemental Appropriations Act simply establishes Ukrainians' eligibility for certain federal assistance if (a) they are paroled into the United States between February 24, 2022 and September 30, 2023 (or are paroled into the United States after that period but are the family member of an individual who was paroled into the United States during that period) and (b) their parole has not been terminated.

35. Consistent with its duties under Section 20 of H.E.A. 1050, promptly upon the passage of that statute the Indiana Bureau of Motor Vehicles promulgated an emergency rule, mirroring the requirements of H.E.A. 1050, that allows noncitizens who "hav[e] been granted parole as defined in IC 9-13-2-121.5" to obtain a driver's license, permit, or identification card and/or a registration and certificate of title for a motor vehicle. A true and correct copy of this emergency rule is attached and incorporated herein as **Exhibit 1**.

36. In other words, despite the fact that nationals of many countries are eligible for and are granted humanitarian parole, H.E.A. 1050 provides a pathway for nationals of only one country—

Ukraine—to obtain state-issued driver's licenses or identification cards or to register or title vehicles.

37. The Indiana Bureau of Motor Vehicles receives federal financial assistance and is therefore subject to the requirements of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq*.

**Factual Allegations Concerning the Plaintiffs**

*Jeffson St-Hilaire*

38. Jeffson St-Hilaire is a Haitian national who was admitted to the United States on humanitarian parole on March 3, 2023.

39. He was admitted to the United States pursuant to the CHNV Parole Program, described above, and his initial parole period extends until March 2025, although his placement on parole may be subject to renewal at that time. The stamp on his passport evidencing his placement on parole is attached and incorporated herein as **Exhibit 2**.

40. Pursuant to the requirements of the CHNV Parole Program, an Indiana resident sponsored Mr. St-Hilaire's application for and placement on that program, and agreed to assume financial responsibility for Mr. St-Hilaire during his parole period.

41. After arriving in the United States on humanitarian parole, Mr. St-Hilaire applied for and received from the federal government both employment authorization and a social security card. He has also applied for and received certain public benefits for which he is eligible, including Medicaid and Supplemental Nutrition Assistance Program benefits (formerly Food Stamps). His employment authorization is attached and incorporated herein as **Exhibit 3**.

42. After receiving his employment authorization, Mr. St-Hilaire obtained a job working as an electrician's assistant. Public transportation does not exist that would transport him to and from his job. Instead, he lives in a rural community where the dominant form of transportation for all

persons (and the only form of transportation for many persons) is through the use of personal vehicles.

43. Instead, to travel to and from his job, Mr. St-Hilaire has relied exclusively on his ability to obtain rides from co-workers. While Mr. St-Hilaire is grateful for this assistance, it means that his ability to travel to and from his job generally depends on the schedules of others and he very much wishes he did not have to rely on this assistance.

44. In addition to being able to travel to and from his job without requiring assistance from co-workers, Mr. St-Hilaire wishes to be able to transport himself to run errands, to social events, and to otherwise explore Indiana. In fact, as with most persons, obtaining a driver's license and the resulting ability to drive would allow Mr. St-Hilaire to realize a level of self-sufficiency and independence that he currently is unable to experience in the United States.

45. While Mr. St-Hilaire does not currently own a vehicle, he has access to a vehicle owned by the individual who is sponsoring his parole that he would be able to use regularly.

46. After obtaining his work authorization, Mr. St-Hilaire attempted to obtain his learner's permit from the Indiana Bureau of Motor Vehicles. This would allow him to enroll in a driver education program and would allow him to practice driving when accompanied by a licensed driver at least twenty-five years of age.

47. In order to obtain a learner's permit in Indiana, in addition to providing certain documentation an individual must take and pass both a written "knowledge" examination and a vision screening.

48. Mr. St-Hilaire took and passed both of these tests. After doing so, however, he received a letter from the Indiana Bureau of Motor Vehicles explaining that he is ineligible to receive a learner's permit as a result of H.E.A. 1050. A true and correct copy of this letter is attached and

incorporated herein as **Exhibit 4**.

49. Mr. St-Hilaire continues to desire to obtain first his learner's permit and then his driver's license from the Indiana Bureau of Motor Vehicles although he is not permitted to do so insofar as he is on humanitarian parole from Haiti.  If he were on humanitarian parole from Ukraine, on the other hand, he would be permitted to obtain this state-issued identification.

*Merlange Meme, Evenks Meme, Nadege Jean Marie, and L.M.D.M.*

50. Merlange Meme, Evenks Meme, Nadege Jean Marie, and L.M.D.M. are all Haitian nationals who were admitted to the United States on humanitarian parole in January 2023.

51. Like Mr. St-Hilaire, they were admitted to the United States pursuant to the CHNV Parole Program, described above, and their initial parole period extends until January 28, 2025, although their placement on parole may be subject to renewal at that time.  Documentation from the federal government evidencing their placement on parole is attached and incorporated herein as **Exhibit 5**.

52. Pursuant to the requirements of the CHNV Parole Program, the applications for and placement on the CHNV Parole Program were sponsored by Martin Welp.  Mr. Welp is an Indiana resident and United States citizen.  Ms. Meme and Mr. Meme are Mr. Welp's sister-in-law and brother-in-law, respectively.  Ms. Jean Marie is the biological mother of Mr. Welp's adopted daughter, and L.M.D.M. is the sister of Mr. Welp's adopted daughter.  By sponsoring these applications for and placement on the CHNV Parole Program, Mr. Welp agreed to assume financial responsibility for these individuals during their parole period.

53. After arriving in the United States on humanitarian parole, Ms. Meme, Mr. Meme, and Ms. Jean Marie applied for and received from the federal government both employment authorization and social security cards.  Their employment authorizations are attached and incorporated herein

as **Exhibit 6**.

54. An application for employment authorization was also submitted on behalf of L.M.D.M. and approved by the federal government although, insofar as she is only nine years old, she will not be seeking employment. For persons on humanitarian parole, obtaining employment authorization is necessary to receive a social security card, which serves as an important form of identification for a wide array of purposes. L.M.D.M.'s employment authorization is attached and incorporated herein as **Exhibit 7**. It is Mr. Welp's understanding that L.M.D.M.'s social security card will therefore also be received in the near future.

55. After receiving their employment authorizations, Ms. Meme, Mr. Meme, and Ms. Jean Marie have all obtained jobs. These jobs are not within walking distance from their home, nor does public transportation exist that would transport any of them to or from their jobs. Instead, they live in a rural community where the dominant form of transportation for all persons (and the only form of transportation for many persons) is through the use of personal vehicles.

56. Instead, to travel to and from their jobs, Ms. Meme, Mr. Meme, and Ms. Jean Marie have relied exclusively on their ability to obtain rides from Mr. Welp and his wife (who is the sister of Ms. Meme and Mr. Meme). While the family is making this work to the best of their ability, it requires extraordinary effort each week. Not only do they have to ensure that their schedules align but Mr. Welp's wife spends a significant portion of each week simply driving Ms. Meme, Mr. Meme, and Ms. Jean Marie to and from their full-time jobs. This leaves her frequently exhausted. Ms. Meme, Mr. Meme, and Ms. Jean Marie all very much wish they did not have to rely on this assistance.

57. In addition to being able to travel to and from their jobs without requiring assistance from Mr. Welp and his wife, Ms. Meme, Mr. Meme, and Ms. Jean Marie wish to be able to transport

themselves to run errands, to social events, and to otherwise explore Indiana. In fact, as with most persons, obtaining driver's licenses and the resulting ability to drive would allow them to realize a level of self-sufficiency and independence that they currently are unable to experience in the United States.

58. While Ms. Meme, Mr. Meme, and Ms. Jean Marie do not currently own vehicles, they have access to vehicles owned by Mr. Welp and his wife that they would be able to borrow regularly. Given that they have received their work authorizations and have obtained employment, if they are allowed to drive they also hope to be able to purchase one or more additional vehicles.

59. Ms. Meme, Mr. Meme, and Ms. Jean Marie desire to obtain first their learner's permits and then their driver's licenses from the Indiana Bureau of Motor Vehicles although they are not permitted to do so insofar as they are on humanitarian parole from Haiti. If they were on humanitarian parole from Ukraine, on the other hand, they would be permitted to obtain this state-issued identification.

60. Even if they are unable to obtain (or to immediately obtain) driver's licenses, if allowed to do so Ms. Meme, Mr. Meme, and Ms. Jean Marie would obtain state-issued identification cards from the Indiana Bureau of Motor Vehicles. The family also desires to obtain a state-issued identification card for L.M.D.M., who is obviously too young to receive a driver's license.

61. State-issued identification cards are a form of identification that is well recognized by businesses, government officials, and others throughout Indiana, and the family wants to ensure that, if able, they all have this form of identification. They feel that this is especially important given that they live in a rural community where businesses, other entities, and even law enforcement may not be familiar with, or may be skeptical of, foreign passports or employment authorizations—that is, their only current forms of photo identification.

62. Ms. Meme, Mr. Meme, and Ms. Jean Marie speak only limited English. Prior to signing the verification below, the factual allegations concerning them as well as the verification itself were orally translated into Haitian Creole.

*Concluding Factual Allegations*

63. The ability to drive is, of course, of fundamental importance in American society, particularly in cities and towns in Indiana where services are frequently dispersed and where public transportation is not ubiquitous. The ability to drive is extremely important for any person to obtain self-sufficiency by retrieving groceries and other necessary supplies, attending medical and other appointments, and transporting themselves to and from work.

64. The ability to drive is at least as important for persons on humanitarian parole. These persons are likely to have a host of necessary appointments that other persons do not, for instance, to obtain medical care that was unavailable in their country of origin, to meet with federal officials responsible for overseeing their parole status or request for asylum, or to meet with state officials responsible for determining their eligibility for public benefits. Many also have young children, such that the ability to drive in case of emergencies can be crucial. On top of all this, insofar as persons on humanitarian parole are unfamiliar with Indiana and have few connections in the United States, without the ability to drive they run the risk of living a largely insular existence where they cannot transport themselves to social gatherings or become fully immersed in their new community.

65. There is no legitimate governmental interest, let alone a compelling one, in allowing persons on humanitarian parole from Ukraine but not from other countries to obtain Indiana driver's licenses and identification cards and to register and title vehicles. And even if such an interest existed, the discrimination mandated by H.E.A. 1050 is not appropriately tailored to any

supposed interest.

66. As a result of H.E.A. 1050, the plaintiffs and other persons on humanitarian parole are suffering irreparable harm for which there is no adequate remedy at law.

67. At all times, the defendant has acted or refused to act under color of state law.

**Legal Claims**

68. H.E.A. 1050, which allows persons on humanitarian parole from Ukraine but not from other countries to obtain Indiana driver's licenses and identification cards and to register and title vehicles, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

69. H.E.A. 1050, which allows persons on humanitarian parole from Ukraine but not from other countries to obtain Indiana driver's licenses and identification cards and to register and title vehicles, violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*

70. H.E.A. 1050, which allows persons on humanitarian parole from Ukraine but not from other countries to obtain Indiana driver's licenses and identification cards and to register and title vehicles, is preempted by the federal government's exclusive right to regulate immigration and by the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.*

**Request for Relief**

    **WHEREFORE,** the plaintiffs respectfully requests that this Court do the following:

1. Accept jurisdiction of this cause and set it for hearing.

2. Declare that the defendant has violated the rights of the plaintiffs and that H.E.A. 1050 (and the related emergency rule) is unconstitutional and illegal for the reasons described above.

3. Issue a preliminary injunction, later to be made permanent, enjoining the discrimination

       mandated by H.E.A. 1050 (and the related emergency rule) and enjoining the defendant to allow persons on humanitarian parole from countries other than Ukraine to obtain driver's licenses and identification cards, and to register and title vehicles, on the same terms and conditions as persons on humanitarian parole from Ukraine may do so.

4.    Award the plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

5.    Award all other proper relief.

                                                        Gavin M. Rose
                                                        Kenneth J. Falk
                                                        Stevie J. Pactor
                                                        ACLU of Indiana
                                                        1031 E. Washington St.
                                                        Indianapolis, IN 46202
                                                        317/635-4059
                                                        fax: 317/635-4105
                                                        grose@aclu-in.org
                                                        kfalk@aclu-in.org
                                                        spactor@aclu-in.org

                                                        *Attorneys for the plaintiffs*

## **VERIFICATION**

I hereby verify, under penalties for perjury, that the foregoing statements concerning me are true and correct to the best of my information and belief.

08/20/2023
Date

*Jefson St-Hilaire*
Jefson St-Hilaire
*Plaintiff*

## VERIFICATION

We hereby verify, under penalties for perjury, that the foregoing statements concerning us are true and correct to the best of our information and belief.

08-22-2023
Date

Merlange Mémé
Merlange Meme
*Plaintiff*

08/22/2023
Date

Evenks Meme
Evenks Meme
*Plaintiff*

08/22/2023
Date

Nadege Jean Marie
Nadege Jean Marie
*Plaintiff*

08/22/2023
Date

Martin Welp
*Next Friend of L.M.D.M.*

## AFFIDAVIT OF TRANSLATOR

**COMES NOW** Mathanie Welp, being first duly sworn upon her oath, and states as follows regarding this matter:

1. I am an adult resident of Spencer County, Indiana. I am the wife of Martin Welp and the sister of Merlange Meme and Evenks Meme. Although I was born and raised in Haiti, I have since become a United States citizen.

2. I am fluent in both English and Haitian Creole. Although Merlange Meme, Evenks Meme, and Nadege Jean Marie are taking English classes and are beginning to learn English, they are not fluent in English and speak only Haitian Creole fluently.

3. I have orally translated the portions of this document concerning Ms. Meme, Mr. Meme, and Ms. Jean Marie from English to Haitian Creole for them. I have also orally translated the language of the verification page, immediately above, from English to Haitian Creole for them.

4. I translated this material for them prior to them signing the verification page, immediately above.

## VERIFICATION

I hereby verify, under penalties for perjury, that the foregoing statements are true and correct to the best of my information and belief.

08-22-2023
Date

*Mathanie M Welp*
Mathanie Welp